*506
 
 Middleton, J.
 

 Section 4 of Article XVIII of the Constitution of Ohio provides:
 

 “Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. * * ®”
 

 Section 5 of Article XVIII reads:
 

 “Any municipality proceeding to acquire, construct, own, lease or operate a public utility, or to contract with any person or company therefor, shall act by ordinance and no such ordinance shall take effect until after thirty days from its passage. If within said thirty days a petition signed by ten per centum of the electors of the municipality shall be filed with the executive authority thereof demanding a referendum on such ordinance it shall not take effect until submitted to the electors and approved by a majority of those voting thereon. * * *”
 

 It is argued by the plaintiff that the ordinance in question provides for a contract to be entered into between a public utility and the municipality whereby the public utility agrees to supply its product or service to the municipality or its inhabitants and that consequently the action of council is governed by Section 5, Article XVIII of the Constitution of Ohio. Adopting the common expression, the plaintiff’s claim is that the ordinance is subject to a constitutional referendum as distinguished from a referendum authorized by, and conducted pursuant to, the statutes of Ohio.
 

 It is the opinion of this court that the ordinance in question does not constitute or authorize a contract to acquire, construct, own, lease or operate a public utility or a “contract with any person or company therefor.” It does not require The Ohio Public Serv
 
 *507
 
 ice Company to supply, furnish or sell electric current to anyone. It fixes no rates to be charged by that company in the event it should supply current to any inhabitant of Galion. It merely authorizes The Ohio Public Service Company to make certain use of the streets, alleys and public ways of Galion to enable that company to furnish and supply “electric service” to two industries if and when those industries contract with The Ohio Public Service Company for such service. The ordinance gives the city of Galion no power to require The Ohio Public Service Company to supply current to those two industries and the city would have no interest in any dispute which might arise between The Ohio Public Service Company and those industries with respect to the furnishing or supplying of such service.
 

 If it could be claimed that the effect of this ordinance would be that the city of Galion would indirectly furnish electric service to its inhabitants through The Ohio Public Service Company, the ordinance would, in our judgment, only provide for extension of the present service furnished by the existing municipally owned plant. In such event, the law announced in
 
 State, ex rel. City of Fostoria,
 
 v.
 
 King, Aud.,
 
 154 Ohio St., 213, 94 N. E. (2d), 697, would be applicable.
 

 This court approves the reasoning and decision of the Court of Appeals and finds that the ordinance in question is not subject to referendum pursuant to the provisions of Sections 4 and 5 of Article XVIII of the Constitution of Ohio. There is then no occasion to pass upon the question raised as to the date upon which it would have been necessary to file such referendum petitions.
 

 The plaintiff claimed further that the city council was without power or authority to pass the ordinance and that consequently the ordinance is void. The legislative power of the state to control the use
 
 *508
 
 of
 
 streets
 
 and public grounds has long been established and was briefly stated by this court in
 
 Louisville & Nashville Rd. Co.
 
 v.
 
 City of Cincinnati,
 
 76 Ohio St., 481, 497, 81 N. E., 983, as follows:
 

 “Public streets, squares, landings and grounds are held in trust for the public, and being so held they are, for the use for which they were dedicated or acquired and subject to the property rights of abutting owners, under the absolute control of the legislative power of the state.”
 

 The General Assembly exercised its control by enacting several provisions of the General Code. Section 3714, General Code, provides:
 

 “Municipal corporations shall have special power to regulate the use of the streets, to be exercised in the manner provided by law. The council shall have the care, supervision and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts, within the corporation, and shall cause them to be kept open, in repair, and free from nuisance.”
 

 By Section 9193, General Code, companies organized for the purpose of supplying electric light and power are forbidden to construct their lines through a street, alley, lane, square, etc., of a city or a village without the consent of the municipality.
 

 Likewise, Section 9195, General Code, provides as follows:
 

 “A company organized for the purpose of supplying electricity for power purposes, and for lighting the streets and public and private buildings of a city or village, may manufacture, sell and furnish the electric light and power required therein for such or other-purposes and with the consent of the municipality, under such reasonable regulations as it prescribes, also construct lines for conducting electricity for power and light purposes through the streets, alleys, lanes,
 
 *509
 
 lands, squares and public places of such city or village, by the erection of the necessary fixtures, including posts, piers and abutments necessary for the wires.”
 

 We agree with the Court of Appeals in holding that the city council had the power and authority to pass the ordinance.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Zimmerman, Stewart, Tart, Matthias and Hart, JJ., concur.